**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg**

**CARY ANN WINEGAR**,

        Petitioner,

v.                                    **Case No. 1:20-cv-246**
                                       Judge Bailey

**WARDEN ADAMS**,

        Respondent.

## REPORT AND RECOMMENDATION

On October 26, 2020, Cary Winegar ("the petitioner") filed a *pro se* Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [Doc. 1].   The petitioner paid the applicable $5.00 filing fee. [Doc. 10]. This matter is assigned to the Honorable John Preston Bailey, United States District Judge, and it has been referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The petitioner, who is presently incarcerated in Bruceton Mills, West Virginia ("SFF Hazelton") is serving a 97-month term of imprisonment, followed by an eight-year term of supervised release, after her conviction in the United States District Court for the Eastern District of Tennessee for Conspiracy to Distribute and to Possess with the Intent to Distribute Five Grams or More of Methamphetamine in violation of 21 U.S.C. §§ 846 and 841(B)(1)(B). Judgment, *United States v. Winegar*, No. 2:15-cr-0041-RLC-MCLC,

Doc. 71 (EDTN. Nov. 23, 2015).   Her current **projected** release date is June 2, 2022.

The petitioner filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging the BOP's failure to award, or denial of, time credit for completing programs or productive activities under the First Step Act of 2018 ("FSA"), 18 U.S.C. § 3632(d)(4)(A).   [Doc. 1].   In addition, she requests that the Court order her to be placed in Residential Reentry Placement ("RRC") for 12 months under the Second Chance Act as opposed to the Hazelton staff recommendation for a period lasting between 151 and 180 days.   In addition, it appears that she is requesting as an alternative that she be awarded 12 months of home confinement pursuant to the First Step Act. On June 8, 2021. in response to a show cause order, the respondent filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment alleging, that the petitioner has failed to exhaust her administrative remedies with respect to either programming credits or RRC placement, and therefore, the petition should be dismissed.   In the alternative, the respondent alleges that the petition is premature with respect to Time Credits, and the petitioner's placement in an RRC is up to the discretion of the BOP.   [Doc. 15-1].   On June 9. 2021, a <u>Roseboro</u> Notice was issued. [Doc. 16].   On June 21, 2021, the petitioner filed a Response. [Doc. 18].   Finally, on July 6, 2021, the respondent filed a Reply. [Doc. 19].

## **<u>STANDARD OF REVIEW</u>**

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).   In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff.   *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.   In *Twombly*, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted).   Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable," Id.   Therefore, for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I.DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v.*

*United States*, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in *Ashcroft v. Iqbal*, where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. *See Blackledge v. Allison*, 431 U.S. 63, 80 (1977); *see also Maynard v. Dixon*, 943 F.2d 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *United States v. Lee*, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. *Anderson,* 477 U.S. at 248-49.

## ANALYSIS

### A.  Exhaustion of Administrative Grievances

Generally, a federal inmate must exhaust avail able administrative remedies before she files a habeas petition.   *See, e.g., McClung v. Shearin*, 90 Fed.Appx. 444 (4th Cir. 2004); *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001); *Martinez v, Roberts*, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241  petition) *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996) (same); *Greene v. Warden FCI Edgefield*, 2017 WL 1458997 (D.SC 2017)) (same); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W. Va. 2004) (same).   In particular,   it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid `premature interruption of the administrative process; (2) to let the agency develop t he necessary factual background upon which decisions should be based; (3) the permit the agency to exercise its  discretion or  apply its  expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources…' (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative process could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" *Alexander v. Hawk*, 159 F.2d 1321, 1327-28) (11th Cir. 1998) (internal citations omitted).

However, because the statute authorizing habeas lawsuits does not expressly require administrative exhaustion, *Reeder v. Phillips*, 2008 WL 2434003 at *2 (N.D.W. Va. June 12, 2008), this Court retains jurisdiction to disregard the exhaustion requirement in "pressing circumstances." *Id.* at *3. However, exhaustion should only be excused where administrative review would be futile. *Jaworski v. Gutierrez*, 509 F.Supp. 573 (N.D.W. Va. 2007). Therefore, exhaustion is required unless the reviewing agency is certain to rule adversely. *Reeder*, 2008 WL 2434003 at *3.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director ("RD") signed the response.[1] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels.

---

[1] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, 986 F.Supp. 941, 943 (D. Md. 1997).

Within the BOP's record-keeping system, each administrative remedy request is assigned a six-digit numerical ID, or case number, as well as an alpha-numeric suffix. For each specific remedy request, the numerical ID, or case number, remains the same, while the alpha-numeric suffix may change, depending upon the progression of the request through the various levels of administrative review. The alpha portion of the suffix indicates the specific level of the administrative review process.  Thus, the suffix "F" identifies a remedy request at the institutional (the facility) level, while the letter "R" represents the Regional Office level, and the letter "A" indicates the General Counsel, or the Central Office level. The numeric portion of the suffix indicates the number of times that particular administrative grievance has been filed at a specific level. For example, "F1," indicates the inmate has filed once at the institutional level. If the inmate is rejected at that level and re-files at the same level, the suffix would be "F2."

An inmate's complaint at the institutional level or on appeal may be rejected for noncompliance with the requirements of the administrative remedy process. If the defect can be cured, the inmate will be given an opportunity to do so and to resubmit his complaint. If the inmate is not given an opportunity to fix his complaint he may appeal to the next level. Generally, an inmate has not exhausted his remedies until he has sought review and received a final substantive response at all three levels.

In the instant case, the records maintained by the BOP establish that the petitioner has filed a total of three administrative remedies while in the BOP custody.   On

November 3, 2021, she requested programming credits per the First Step Act at the institutional level. That remedy was closed on December 10, 2020, and no appeal was filed.   The petitioner then filed two remedies with regard to a Reduction in Sentence, also known as Compassionate Release, first at the institutional level and then an appeal to the Regional Office.   The petitioner did not appeal the Regional Office's response.   The petitioner has filed no remedies asking for additional time in a halfway house or for home confinement. [Doc. 15-2 at 6].   Accordingly, the respondent maintains that this action should be dismissed for failure to exhaust administrative grievances.

In response, the petitioner maintains (incorrectly) that the respondent alleges that she filed only one administrative remedy.   She then attaches copies of the administrative grievances that she filed with respect to programming credits. Those attachments establish that she filed a BP-8 on November 9, 2020 regarding programming credits under the First Step Act.   On November 10, 2020 her unit manager notes that this issue was unresolved, and no relief was granted. [Doc. 18-1 at 2]. On November 10, 2020, the petitioner filed a BP-9. [*Id.* at 3].   On December 3, 2020, the Administrative Remedy Coordinator indicated that additional time was needed to respond. [*Id.* at 6]. On December 4, 2020, the Warden responded that "[t]he guidelines are still under development regarding the First Step Act and how it will affect inmates' eligibility on earning credits toward their time served. At this time, we are unable to provide you the information you requested." [*Id.*at 7].   The petitioner was advised that if she was dissatisfied with this response, she could appeal to the Mid-Atlantic Regional Director. [*Id.*].

In reply, the respondent notes that the petitioner never appealed the BP-9, and

therefore did not exhaust her administrative grievances with respect to programming credits under the First Step Act. [Doc. 19].   Although   the petitioner alleges that she filed a "third" remedy to the Central Office and didn't receive a response because she was moved to a different unit, she has not attached her BP-11[2], and says nothing about filing a BP-10 at the Regional Office.

The undersigned finds that the weight of the evidence establishes that the petitioner did not exhaust her administrative grievances, and this matter is due to be dismissed. However, even if the Court is inclined to waive exhaustion, this case is still due to be dismissed as discussed below.

**B.      Petitioner has not demonstrated a present right to habeas relief.**

The First Step Act of 2018 ("FSA"), signed into law on December 21, 2018, includes a provision for evidence-based recidivism reduction program incentives and productive activities rewards.   *See* Pub. L. 115-391, 132 Stat. 5194 (2018); *see also* 18 U.S.C. § 3632(d).   Through this program, prisoners may earn various incentives and rewards, including the awarding of time credits, for their participation in and completion of certain programs and productive activities that are assigned to them by Bureau of Prisons ("BOP") staff.   *See* 18 U.S.C. §§ 3632(b), (d).

As part of the FSA, and as set forth in 18 U.S.C. § 3621(h), the BOP was required to create a new risk and needs assessment system to determine the recidivism risk of each prisoner by January 15, 2020, begin implementing the system on that date, and

---

[2] If the petitioner had filed either a BP-10 or BP-11, she would have her copy of those documents, just as she her copy of both the BP-8 and BP-9.

have full implementation completed by January 15, 2022.   *See Saleh v. Young*, No. 5:19-cv-00468, 2021 WL 1758711 (S.D.W. Va. May 4, 2021).   Thereafter, prisoners who successfully complete evidence-based recidivism reduction programming or productive activities "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A).   Additionally, a prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."   18 U.S.C. § 3632(d)(4)(A)(ii).

Thus, as noted by the District Court in *Saleh*, the BOP has until January 15, 2022 to provide evidence-based recidivism reduction programs and productive activities for all prisoners and, only at that time, will it be <u>required</u> to award such time credits to eligible prisoners.   2021 WL 1758711 at *1 (citing *Hand v. Barr*, No. 1:20-cv-00348-SAB-HC, 2021 WL 392445, * 5 (E.D. Cal. Feb. 4, 2021).   As further noted by the *Saleh* court, the FSA provides that a "prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of the enactment of this subchapter" (January 15, 2020). 18 U.S.C. § 3632(d)(4)(B).   *Id.*

Because the authority of the BOP to award incentive-based time credits prior to January 15, 2022 is entirely discretionary, there is no basis for this Court to mandate that the BOP award the petitioner any time credits pursuant to 18 U.S.C. § 3632(d)(4)(A). *See Jones v. Phelps*, No. 1:21-cv-418-JFA-SVH, 2021 WL 3668885, at *8 (D.S.C. June 16,

10

2021), *report and recommendation adopted*, 2021 WL 3667396 (D.S.C. Aug. 17, 2021) ("The relevant statutes, as well as the heavy weight of authority, do not show that the BOP is obligated to apply petitioner's earned time credits prior to January 15, 2022 . . . the court has no discretion to disregard the plain language of the relevant statutes."); *Knight v. Bell,* No. 20-cv-3108-JKB, 2021 WL 1753791, at *3 (D. Md. May 4, 2021) (BOP inmates seeking earned time credits under FSA cannot obtain habeas relief at this time).

## C.    RRC Placement/Home Confinement

On April 9, 2008, the Second Chance Act of 2007, Pub. L. No. 110-99, was enacted. It amended 18 U.S.C. § 3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." See 18 U.S.C. § 3624(c)(l). The statute provides that those conditions may include confinement in a community correctional facility/community corrections center/residential re-entry center, all of which are commonly known as a "half-way house." The statute provides that the decision to confine a prisoner in a "half-way" house shall be made on an individual basis and shall be made considering several factors, most of which are identified in 18 U.S.C. 362l (b). See Miller v. Whitehead, 527 F.3d 752 (8th Cir. 2008) (BOP may consider factors in addition to those identified in 3621(b)). The factors identified in 18 3621(b) are as follows:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

11

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28."

However, a prisoner is not automatically entitled or guaranteed such placement for any minimum period. 18 U.S.C. § 3624(c). The FSA does not alter this rule.

With respect to home confinement, the FSA amended 18 U.S.C. § 3624(c)(2) to provide:

Home confinement authority. – The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C. § 3624(c)(2); First Step Act of 2018, § 602, 132   Stat. at 5238.

It is well established that an inmate has no constitutional right to be confined to a particular institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC   or on home detention prior to her release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional   violation occurred.

The petitioner makes no claim that the BOP has committed a constitutional violation. Instead, she simply argues that because she was sentenced to 97 months of incarceration, she will need 12 months of halfway house placement in order to find a job, save money, find a place to live, and get a vehicle.   Conversely, it is clear from the record that the BOP analyzed the requisite factors outlined in 18 U.S.C. § 3621(b) when it decided whether, and for how long the petitioner was to be placed in a halfway house. [Doc. 22 at 11-12].[3]

In conclusion, the petitioner's request for Earned Time Credits under the First Step Act is prematurely filed. In addition, with respect to halfway house placement or home confinement, the petitioner is requesting that this Court order the BOP to place her in an RRC for twelve months or, in the alternative, place her on home confinement. This Court does not have the authority to do so. Therefore, the petitioner has not presented a claim which this Court has jurisdiction to address. When subject matter jurisdiction does not exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 US 83, 93-101 (1998); *Reinbold v. Evers*, 187 F.3d 348, 359 n. 10 (4th Cir. 1999).

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the respondent's Motion to Dismiss **[Doc. 15]**, **DENY** the

---

[3] As originally filed on June 8, 2021, the Referral form [Doc. 15-1 at 11-12] was blank, although the affidavit noted its findings.[Doc. 15-1 at 4].   The respondent refiled the exhibit and included the actual referral form for the petitioner.

petitioner's Petition for a Writ of Habeas Corpus without prejudice **[Doc. 1]**; and **DISMISS** this civil action from the docket of the court.

Within fourteen days after service of this Report and Recommendation, any party may file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  A copy of such objections should also be submitted to the United States District   Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave   to exceed the page   limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the  petitioner by certified mail, return receipt requested, to her last known address as shown on the docket, and to counsel of record via electronic means. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case and **remove**

14

**the PSLC case flag**.

      DATED:  November 3, 2021

                    /s  *James P. Mazzone*
                    JAMES P. MAZZONE
                    UNITED STATES MAGISTRATE JUDGE